UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

——

| | | |
|---|---|---|
| JAMES BASTIAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:13-cv-666 |
| | ) | |
| v. | ) | Honorable Robert J. Jonker |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |
| | ) | |

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to disability insurance benefits (DIB) and supplemental security income (SSI) benefits. On December 10, 2010,[1] plaintiff filed his applications for DIB and SSI benefits alleging a November 10, 2010 onset of disability.[2]  (A.R. 127-37).  His claims for DIB and SSI benefits were denied on initial review.  On January 27, 2012, he received a hearing before an administrative law judge (ALJ), at which he was represented by counsel.  (A.R. 25-47).  On February 9, 2012, the ALJ issued his decision finding that plaintiff was not disabled.  (A.R. 14-21).  On April 24, 2013, the Appeals

---

[1]December 10, 2010 is a "protective filing date."  It is the term for the first time an individual contacts the Social Security Administration about filing for benefits.  See http://www.ssa.gov/glossary.htm (last visited Sept. 15, 2014).  A protective filing date allows an individual to have an earlier application date than the date the signed application is actually filed.  *Id.*

[2]SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335;  *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004).  The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed.  Thus, January 2011 is plaintiff's earliest possible entitlement to SSI benefits.

Council denied review (A.R. 1-4), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision. Plaintiff argues that the Commissioner's decision should be overturned on the following grounds:

1. The ALJ failed to properly evaluate and weigh medical opinion evidence under the treating physician rule;

2. The ALJ failed to evaluate plaintiff's obesity at step 3 of the sequential evaluation process; and

3. The ALJ failed to properly evaluate plaintiff's credibility.

(Plf. Brief at 2, docket # 17). I recommend that the Commissioner's decision be vacated and that the matter be remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings, because the ALJ's opinion falls short of satisfying the procedural requirement of providing "good reasons" for the weight given to the opinions of a treating physician.

**Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007).

The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013)("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

**Discussion**

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from November 10, 2010, through the date of the ALJ's decision. (A.R. 16). Plaintiff had not engaged in substantial gainful activity on or after November 10, 2010. (A.R. 16). Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine with radiculopathy. (A.R. 16). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 17). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is limited to lifting and carrying up to 20 pounds occasionally and 10 pounds frequently; he can sit at least 6 hours out of an eight-hour day, stand for 2 hours of an eight hour day with standing alternated to sitting for 5 min[.] after every 30 minutes of standing, but stay on task. The claimant can walk up to 2 hours of an eight-hour day. He can push and pull up to 20 pounds occasionally and 10 pounds frequently. The claimant can occasionally climb ramps and stairs, but can never climb ladders and scaffolds. He can occasionally balance, stoop, kneel, and crouch. He can never crawl. In addition, the claimant is limited to unskilled work secondary to the effects of pain medication.

(A.R. 17). The ALJ found that plaintiff's testimony regarding his subjective limitations was not fully credible:

> The claimant is a divorced 43-year old male who complains of severe back pain following a fall at his home in November 2010. His complaints include gradual onset of constant episodes of moderate bilateral lower back pain, described as a sharp, radiating to the bilateral buttock and bilateral thigh. On a 10-point scale, the claimant rates his pain at a nine. His symptoms are improved by rest, nonsteroidal anti-inflammatory drugs, and opioid analgesics. His symptoms are exacerbated by standing, prolonged sitting, lifting and bending. The claimant alleges his symptoms are worsening since the onset of his pain and that associated symptoms now include spasm, stiffness, leg numbness, leg weakness, urinary incontinence, blurred vision and headaches.
>
> Objective medical evidence in the record supports the claimant's allegations of a significant impairment resulting from his December 2010 back injury. However, it is not sufficient to [support] a finding of disability. An x-ray of his lumbar spine, taken shortly after the

incident, showed minimal facet arthropathy at L4-L5 on he left with no other abnormality of the lumbar spine identified (1F). When the claimant's condition worsened, with pain radiating down his right leg, he presented to the Ingham Regional Medical Center emergency room (6F). An MRI of his lumbar spine showed L4-L5 and L5-S1 central disc herniations and he was admitted for further treatment and evaluation (*Id.*). The record reflects the claimant's discharge diagnosis as intractable back pain secondary to herniated discs at L4-L5, L5-S1, migraine, cephalgia, hypertension, degenerative joint disease, and right lower extremity radiculopathy (*Id.*). Nonetheless, treatment records further reflect no need for surgical intervention noting an EMG showed there was no evidence of any lumbosacral radiculopathy or tibioperoneal neuropathy or peripheral neuropathy (*Id.*). The claimant was discharged with a prescription for Vicodin ES to be taken four times daily to treat his symptoms and advised to seek further medical management as well as follow up with the pain clinic. There is no record of aggressive compliance with these recommendations on the part of the claimant.

\* \* \*

After careful consideration of the evidence, I find that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. I find that the objective medical evidence does not support the level of limitations as alleged by the claimant especially in light of the absence of a treating source opinion. Furthermore, the claimant's ability to continue to care for himself and his dog belies his claims of a severe disability. He states he feeds and walks his dog, is able to prepare meals for himself, cleans house, does laundry, drives, and shops for groceries (3E). In addition, the record of treatment and medication do not support the level of limitations alleged by the claimant. The record does not contain evidence showing any treatment other than a low-level medication support to treat the claimant's pain.[3] More aggressive treatment, as might be indicated by a more severe impairment, is not recommended. Finally, the record reflects a sporadic and partially successful work history prior to the claimant's application for disability. I note the claimant testifies he was let go from his job with Community One Property Management due to job related limitations he experienced following injury in December 2010. He states he subsequently applied for unemployment benefits but was turned down due to being ineligible as a contract employee rather than because he was medically disabled. I also note to apply for unemployment compensation requires a showing that the applicant is able to work. These factors also work against a finding of credibility relative to the claimant's allegations.

---

[3]Earlier in his opinion, the ALJ had noted that the "record contains no evidence of treatment at [a] pain clinic." (A.R. 18).

(A.R. 17-19). The ALJ found that plaintiff could not perform any past relevant work. (A.R. 19). Plaintiff was 42-years-old as of the date of his alleged onset of disability and 43-years-old on the date of the ALJ's decision. Thus, at all times relevant to his claims for DIB and SSI benefits, plaintiff was classified as a younger individual. (A.R. 19). Plaintiff has a limited education and is able to communicate in English. (A.R. 20). The ALJ found that the transferability of jobs skills was not material to a determination of disability. (A.R. 20). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age with his RFC, education, and work experience, the VE testified that there were approximately 8, 700 jobs in Michigan that the hypothetical person would be capable of performing. (A.R. 43-45). The ALJ found that this constituted a significant number of jobs. Using Rule 202.18 of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled. (A.R. 20-21).

### 1.

Plaintiff argues that the ALJ committed reversible error by "not properly weighing" the medical opinion evidence. Specifically, he argues that the ALJ failed to properly evaluate a progress note dated April 1, 2011, from a treating physician, Edward Ball, D.O., in which a notation regarding a 10-pound weight restriction appears. (Plf. Brief at 5) (citing A.R. 239). Plaintiff contends that this notation was Ball's "medical opinion that Plaintiff should be limited to a 10 pound lifting restriction." (*Id.*). The weight restriction portion of plaintiff's argument cannot withstand scrutiny because the content and context of the notation make it highly unlikely that Dr. Ball had imposed such a restriction, and it was plaintiff's burden to present evidence establishing that Dr. Ball had imposed the restriction. Nonetheless, I recommend that the ALJ's decision be vacated and

that the matter be remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings, because the ALJ's opinion falls short of satisfying the procedural requirement of providing "good reasons" for the weight given to Dr. Ball's opinions.

A treating physician's opinion that a patient is disabled is not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d)(1), (3), 416.927(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician."). Likewise, "no special significance"[4] is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(1), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

Generally, the medical opinions of treating physicians are given substantial, if not controlling deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)). A

---

[4]"We will not give any special significance to the source of an opinion on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section." 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). An opinion that is based on the claimant's reporting of his symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(c), 416.927(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative

bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Commissioner*, 710 F.3d at 376.

The ALJ's opinion never mentioned Dr. Ball. The ALJ did note "the absence of a treating source opinion" (A.R. 19), but it is not clear whether this was intended as a finding that Dr. Ball was not a treating physician, or that as a treating physician, Dr. Ball never offered opinions regarding specific restrictions stemming from plaintiff's back impairments. Plaintiff presented very little medical evidence in support of his claims for DIB and SSI benefits. The record of treatment provided by Dr. Ball consists of four progress notes: December 3 and 10, 2010, and April 1 and August 24, 2011. (A.R. 204, 205, 239, 244). A single visit to a physician does not suffice to establish a treating physician relationship. *See Kornecky v. Commissioner*, 167 F. App'x 496, 506-07 (6th Cir. 2006). "Indeed, depending on the circumstances and the nature of the alleged condition, two or three visits often will not suffice for an ongoing treatment relationship." *Id.* at 506-07. If the ALJ had mentioned Dr. Ball by name, discussed the four progress notes, and provided an explanation how they fell short of establishing a treating physician relationship, a finding that Dr. Ball was not a treating physician might have been able to pass muster under the deferential substantial evidence standard. Here, the error requiring reversal is the absence of an explanation sufficient to satisfy the procedural "good reasons" requirement, not the strength of the medical evidence of plaintiff's disability.

It was plaintiff's burden to produce evidence in support of his disability claim, not the ALJ's burden. *See Wilson v. Commissioner*, 280 F. App'x 456, 459 (6th Cir. 2008) ("[T]he claimant bears the ultimate burden of proving disability."); *see also Struthers v. Commissioner*, No. 98-1528, 1999 WL 357818, at * 2 (6th Cir. May 26, 1999) ("[I]t is the duty of the claimant, rather

than the administrative law judge, to develop the record to the extent of providing evidence[.]"). The ALJ's special duty to *pro se* parties to develop the record does not extend to plaintiff, because he was represented by an attorney at the hearing. *See Wilson*, 280 F. App'x at 459; *Smith v. Commissioner*, No. 13-4373, __ F. App'x __, 2014 WL 3397594, at * 4-6 (6th Cir. July 11, 2014); *Culp v. Commissioner*, 529 F. App'x 750, 751 (6th Cir. 2013). Plaintiff's attorney did not obtain any affidavit or other statement from Dr. Ball establishing his opinions regarding the functional restrictions stemming from plaintiff's back impairment. The need for such statement from Dr. Ball was readily apparent. When plaintiff's claim was denied on initial review, it was determined that plaintiff could occasionally lift up to 50 pounds and could occasionally lift up to 25 pounds. (A.R. 59).

   The medical records reveal that on December 3, 2010, plaintiff appeared at Dr. Ball's office after an eleven-year absence. (A.R. 204). Plaintiff related that he smoked marijuana on a daily basis and drank alcohol. He stated that about a month earlier he fell while staining a deck at his home. He complained of pain in his right leg. (A.R. 204). Dr. Ball gave plaintiff a prescription for Naproxen and signed a "return to Work" slip indicating that he was keeping plaintiff off work until the results of diagnostic studies were available. (A.R. 270). X-rays showed "[m]inimal facet arthropathy at L4-5 on the left with no other abnormality of the lumbar spine." (A.R. 206). Plaintiff returned to Dr. Ball on December 13, 2010 for a review of the x-ray results. (A.R. 205).

   On March 21, 2011, plaintiff appeared at the Ingham Regional Medical Center (IRMC) with complaints of increasing back pain. (A.R. 246). He stated that the medication that Dr. Ball had prescribed never relieved his back pain. (A.R. 258). In addition to back pain, plaintiff complained of rights leg sciatica, incontinence, migraines, difficulty walking and a rash on his right

leg. Intake records noted plaintiff's tobacco and marijuana abuse. (A.R. 258). Objective tests at IRMC indicated central disc herniations at L4-L5 and L5-S1, and mild facet arthropathy at L4-5, and L5-S1. (A.R. 232-38, 267-69). Plaintiff advised Michael Winkelpleck, D.O., that he was an unemployed construction worker. He indicated that he experienced occasional headaches and occasionally smoked marijuana. Dr. Winkelpleck found that plaintiff was not in any acute distress. He was alert and oriented in all three spheres. Plaintiff's back was positive for tenderness to palpation of the lower lumbar spine. (A.R. 255). Plaintiff's muscle strength was 4/5 on the right. Straight leg testing was positive, right greater than the left. Dr. Winkelpleck found no evidence of cauda equina syndrome. He recommended conservative treatment because plaintiff's condition "did not warrant surgical intervention." (A.R. 246, 256). Dr. Winkelpleck summarized the treatment plan as follows:

> Since his complaint has been longstanding of greater than 3 months, we will obtain [an] EMG to rule out any axonal loss since he does have this complaint of weakness and radiculopathy for approximately 3 months. Will also ask pain management team to come evaluate the patient for possible epidural steroid injection to help determine the etiology of the patient's discomfort. He will be brought in by the medicine team and provided adequate pain control. Will also ask physical therapy to see and evaluate the patient to work on gait training and muscle strength. Will follow the patient during his clinical course. Currently, he has no indication for emergent surgery, and a conservative management will be the mainstay of treatment for this patient. If he fails, surgical intervention would be appropriately considered.

(A.R. 256). Plaintiff refused to participate in physical therapy. He stated that he did not want to undergo lower back injections because he preferred a surgical alternative. (A.R. 253). Plaintiff's EMG test returned "normal" results with "no evidence of any lumbosacral radiculopathy or tibeoperoneal neuropathy or peripheral neuropathy." (A.R. 246, 263). The discharge instructions from IRMC advised plaintiff to stop smoking, follow-up with Dr. Ball, Dr. Winkelpleck, and a pain clinic. (A.R. 247).

On April 1, 2011, plaintiff returned to Dr. Ball and gave him a summary of the IRMC treatment recommendations. (A.R. 239). Dr. Ball made a notation that someone had placed plaintiff "on a 10# wt restriction" and had recommended stretching and walking. (A.R. 239). It is highly unlikely that Dr. Ball would have written that plaintiff was "on" a ten-pound weight restriction if he was then imposing such a restriction on April 1, 2011. Further, Dr. Ball's other records suggest that if had intended to impose such a restriction, he would have made a corresponding entry on a "return to work" slip. (*See e.g.*, 12/3/10 progress note and accompanying 12/3/10 return to work slip, A.R. 231, 270). Dr. Ball gave plaintiff prescriptions for Vicodin and Flexeril for his back pain and Lisinopril for his hypertension. (A.R. 241-43). On August 24, 2011, plaintiff returned to Dr. Ball with complaints of back pain. Plaintiff reported that he had "no alcohol" in the last four months. His reflexes were normal. His straight leg raising tests were positive. Dr. Ball renewed plaintiff's Lisinopril prescription. (A.R. 244-45).

On October 27, 2011, plaintiff began treatment with Elmer Novis, M.D., at Mid-Michigan Healthcare Associates. (A.R. 209). Plaintiff complained of back pain. He displayed an abnormal gait. On examination, Dr. Novis found that plaintiff's reflexes, sensation, and coordination were all normal. Plaintiff was 5' 8" tall and weighed 262 pounds. (A.R. 210). Dr. Novis offered a diagnosis of backache and gave plaintiff prescriptions for Diazepam and Hydrocodone-Acetaminophen (Vicodin). (A.R. 211-12). Dr. Novis recommended weight loss and exercise. (A.R. 218). On December 1, 2011, plaintiff returned to Dr. Novis for further treatment. (A.R. 219). Plaintiff related that he had recently been to the emergency room, was diagnosed with a perforated ear drum, received pain medication, and was provided with a prescription for the antibiotic Augmentin. (A.R. 219-30). Dr. Novis found that plaintiff's left tympanic membrane was

red, retracted, and had a perforation. The right tympanic membrane was red and bulging. Dr. Novis gave plaintiff new prescriptions for treatment of his ear problems and continued his prescriptions of Diazepam and Vicodin. (A.R. 220-22).

On January 27, 2012, plaintiff testified at his administrative hearing. He stated: "Dr. Ball [] was the one that told me I was not -- not to lift more than 10 pounds when I first went and seen him [sic]." (A.R. 30). The December 2010 progress notes do not indicate any such restriction. (A.R. 204-05). Plaintiff's attorney elected to rely on his client's testimony claiming that Dr. Ball had imposed a restriction prohibiting him from lifting more than 10 pounds rather than providing the ALJ with evidence from Dr. Ball stating that he had imposed such a restriction and providing an explanation why such a restriction would be medically appropriate based on the objective test results.         Plaintiff argues that under 20 C.F.R. §§ 404.1512 and 416.912 the ALJ was required to re-contact Dr. Ball and seek a clarification regarding the reference to a 10 pound weight limit appearing in the progress note dated April 1, 2011. (Reply Brief at 1, docket # 19). Plaintiff is incorrect. It was his attorney's job to submit evidence that Dr. Ball had imposed this restriction. In *Ferguson v. Commissioner*, 628 F.3d 269 (6th Cir. 2010), the Sixth Circuit held that there were two conditions that must both be met to trigger the duty to recontact: "the evidence does not support a treating source's opinion ... and the adjudicator cannot ascertain the basis of the opinion from the record." *Id.* at 273. An unsupported opinion alone does not trigger the duty to recontact. *Ferguson*, 628 F.3d at 273. The duty is not triggered where, as here, the plaintiff fails to demonstrate that an opinion at issue was actually the treating physician's opinion. *Ferguson*, 628 F.3d at 273-74. Where the duty is not triggered, it is not violated. *Ferguson*, 628 F.3d at 274.

In summary, the Sixth Circuit has held that claimants are entitled to receive "good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *See Smith v. Commissioner*, 482 F.3d at 875-76. The ALJ's opinion cannot pass scrutiny under this standard because the ALJ never mentioned Dr. Ball, examined the nature of Ball's physician/patient relationship with plaintiff, or discussed Dr. Ball's opinions.

**2.**

Plaintiff's argument that the ALJ "failed to consider" his obesity at step 3 of the sequential analysis is meritless. The administrative finding whether a claimant meets or equals a listed impairment is made at step 3 of the sequential analysis.[5] *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Step-3 regulates a "narrow category of adjudicatory conduct." *Combs v. Commissioner*, 459 F.3d 640, 649 (6th Cir. 2006) (*en banc*). It "governs the organization and evaluation of proof of listed impairments that, if supported, renders entitlement to benefits a foregone conclusion." *Id.* "Claimants are conclusively presumed to be disabled if they suffer from an infirmity that appears on the [Social Security Administration's] SSA's special list of impairments,

---

[5]"Administrative law judges employ a five-step sequential inquiry to determine whether an adult claimant is disabled within the meaning of the Social Security Act." *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). Under the sequential analysis, "The claimant must first show that []he is not engaged in substantial gainful activity. Next, the claimant must demonstrate that []he has a 'severe impairment.' A finding of 'disabled' will be made at the third step if the claimant can then demonstrate that h[is] impairment meets the durational requirement and 'meets or equals a listed impairment.' If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that []he is incapable of performing work that []he has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work." *White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009).

or that is at least equal in severity to those listed. The list identifies and defines impairments that are of sufficient severity as to prevent any gainful activity. A person with such an impairment or an equivalent, consequently, necessarily satisfies that statutory definition of disability." *Id.* at 643 (internal citations omitted). It is well established that a claimant has the burden of demonstrating that he satisfies all the individual requirements of a listing. *See Elam*, 348 F.3d at 125. "If all the requirements of the listing are not present, the claimant does not satisfy that listing." *Berry v. Commissioner*, 34 F. App'x 202, 203 (6th Cir. 2002); *see Ritchie v. Commissioner*, 540 F. App'x 508, 511 (6th Cir. 2013). "It is insufficient that a claimant comes close to satisfying the requirements of a listed impairment." *Elam*, 348 F.3d at 125. There is no listed impairment for obesity, *see Combs v. Commissioner*, 459 F.3d at 644, and plaintiff offers no argument regarding any other listing that plaintiff purportedly met or equaled. I find that the ALJ's finding that plaintiff did not meet or equal the requirements of any listed impairment (A.R. 17), is supported by more than substantial evidence.

Plaintiff's argument fares no better when it is considered as a challenge to the ALJ's factual finding regarding his RFC.[6] RFC is an administrative finding of fact reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3). RFC is the most, not the least, a claimant can do despite his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Griffeth v. Commissioner*, 217 F. App'x 425, 429 (6th Cir. 2007). The ALJ complied with the requirements of SSR 02-01p and considered plaintiff's obesity when he made his factual finding regarding

---

[6]The administrative finding of a claimant's RFC is made between steps 3 and 4 of the sequential analysis and it is applied at steps 4 and 5. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity. We use the residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.").

plaintiff's RFC.[7] (A.R. 16-17). The ALJ found that plaintiff retained the RFC for a limited range of light work. (A.R. 17). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d at 534. The ALJ's factual finding regarding plaintiff's RFC is supported by more than substantial evidence.

### 3.

Plaintiff argues that the ALJ failed to properly evaluate his credibility. (Plf. Brief at 7-8). Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial evidence" standard. This is a "highly deferential standard of review." *Ulman v. Commissioner*, 693 F.3d 709, 714 (6th Cir. 2012). "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005); *see Ritchie v. Commissioner*, 540 F. App'x 508, 511 (6th Cir. 2013) ("We have held that an administrative law

---

[7]The Sixth Circuit has repeatedly held that SSR 02-01p does not establish any particular procedural mode of analysis for addressing the claims of obese disability claimants. *See Coldiron v. Commissioner*, 391 F. App'x 435, 442-43 (6th Cir. 2010) (It is "a mischaracterization to suggest that Social Security Ruling 02-1p offers any particular mode of analysis for obese disability claimants.") (quoting *Bledsoe v. Barnhart*, 165 F. App'x 408, 411-12 (6th Cir. 2006)); *Nejat v. Commissioner*, 359 F. App'x 574, 577 (6th Cir. 2009); *see also Titles II & XVI: Evaluation of Obesity,* SSR 02-1p (reprinted at 2002 WL 34686281) (SSA Sept. 12, 2002).

judge's credibility findings are 'virtually unchallengeable.'"). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge [his] subjective complaints." *Buxton v. Halter*, 246 F.3d at 773; *accord White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

The Sixth Circuit recognizes that meaningful appellate review requires more than a blanket assertion by an ALJ that "the claimant is not believable." *Rogers v. Commissioner*, 486 F.3d 234, 248 (6th Cir. 2007). The *Rogers* court observed that Social Security Ruling 96-7p requires that the ALJ explain his credibility determination and that the explanation "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248.

The ALJ gave an adequate explanation why he found that plaintiff's testimony regarding his subjective functional limitations was not fully credible. (A.R. 17-19). It was appropriate for the ALJ to take plaintiff's daily activities into account in making his credibility determination. *See Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). Plaintiff's credibility was further undermined by the absence of significant atrophy or neurological deficits. *See Crouch v. Secretary of Health & Human Servs.*, 909 F.2d 852, 856-57 (6th Cir. 1990) (the absence of atrophy and significant neurological deficits supports the Commissioner's conclusion that the claimant's

allegation of severe and disabling pain was not credible); *see also Gaskin v. Commissioner*, 280 F. App'x 472, 477 (6th Cir. 2008). Plaintiff's EMG tests were normal. The ALJ reasonably discounted plaintiff's credibility based on his sporadic work history. *See e.g.*, *Robinson v. Commissioner*, No. 13-cv-13124, 2014 WL 4145339, at * 8 (E.D. Mich. Aug. 20, 2014); *Wright v. Colvin*, 13-cv-247, 2014 WL 1873416, at * 5 (E.D. Ky. May 8, 2004); *Sears v. Colvin*, No. 1:11-cv-96, 2014 WL 1715425, at * 20 (M.D. Tenn. Apr. 29, 2014). It was appropriate for the ALJ to draw an adverse inference regarding plaintiff's credibility from his application for unemployment benefits during the period he claims to have been disabled. *See Workman v. Commissioner*, 105 F. App'x 794, 801 (6th Cir. 2004) ("Applications for unemployment and disability are inherently inconsistent."); *see also*

*Loyacano v. Commissioner*, No. 1:13-cv-144, 2014 WL 1660072, at * 5 (W.D. Mich. Apr. 25, 2014) (collecting cases); *Smith v. Commissioner*, No. 1:12-cv-904, 2014 WL 197846, at * 16 (S.D. Ohio Jan. 15, 2014); *Barton v. Astrue*, No. 3:11-cv-1239, 2013 WL 6196297, at * 7 (M.D. Tenn. Nov. 27, 2013). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Heston v. Commissioner*, 245 F.3d at 534. The ALJ gave an adequate explanation why he found that plaintiff's testimony was not fully credible and his factual finding regarding plaintiff's credibility is supported by more than substantial evidence.

### **Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be vacated and that the matter be remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

Dated:   September 16, 2014              /s/  Phillip J. Green
                                         United States Magistrate Judge


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).